# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. *ex rel.* JOSEPH EARL PERRY,<br><br>                                      Plaintiff,<br>  vs.<br>PACIFIC MARITIME INDUSTRIES CORP., HARCON PRECISION METALS, INC., and JOHN ATKINSON,<br><br>                                    Defendants. | CASE NO. 13cv2599-LAB (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Joseph Earl Perry brought this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging violations by two government contractors—Pacific Maritime Industries Corporation and Harcon Precision Metals, Inc.—and their president, John Atkinson. Defendants have filed a motion to dismiss. (Docket no. 10.)

## I.  Factual Background

Perry alleges that, from September 2010 until November 2012, he was employed by Defendants "in the capacities of engineering, CNC programming, planning and quality control." (Docket no. 1 at ¶ 14.) He contends that, as an employee, he was privy to first-hand information regarding Defendants' performance of government contracts and observed them engage in fraud. (*Id.*)

/ / /

/ / /

### A. Perry's Fraud Allegations

#### 1. NASSCO Metal Joiner Doors Contracts

In May 2011, Defendants entered into several contracts with National Steel and Shipbuilding Company ("NASSCO") to fabricate metal joiner doors that would be installed on U.S. Navy vessels. (*Id.* at ¶ 16.) Perry alleges the contracts required the doors to meet specific testing criteria and to be fabricated using specific adhesive. (*Id.* at ¶ 17.) Perry alleges that Defendants didn't follow these requirements, but still certified that the doors complied with the contractual requirements. (*Id.* at ¶¶ 17–18.) The complaint doesn't identify the required testing or the required adhesive, the adhesive Defendants actually used, the content of the fraudulent certification, the individuals involved with the misrepresentation, or when they made the alleged misrepresentation.

#### 2. DCMA Metal Joiner Doors Contracts

In May 2012, Perry assisted in the inspection of metal joiner doors that Defendants were manufacturing as part of contracts with the Defense Contract Management Agency ("DCMA") of the U.S. Department of Defense. (*Id.* at ¶ 25.) Defendants' contract required a two-part inspection, and required that the doors couldn't be more than 5% overweight. (*Id.* at ¶¶ 20, 21, 25, 26.) But, Perry alleges, Defendants didn't conduct a two-part inspection and the doors were 30% overweight. (*Id.* at ¶¶ 21, 26.) Perry claims he brought these defects to the attention of Atkinson and an engineering manager for the Defendants. (*Id.* at ¶¶ 22, 26.) In response, Atkinson instructed Perry to omit any discussion of these alleged defects from his inspection report, which Defendants were required to submit to the DCMA before the government would approve and pay for the doors. (*Id.*) Defendants submitted the misleading reports and incorrect certificates of conformance to the government and Defendants received payment. (*Id.* at ¶¶ 24, 29.)

#### 3. U.S. Coast Guard Metal Joiner Doors Contract

In June 2012, Defendant Pacific Maritime entered into a contract with the Coast Guard to fabricate and install metal joiner doors on Coast Guard ships. (*Id.* at ¶ 30.) Perry alleges the contracts required the doors to meet specific testing criteria and to be fabricated using

specific adhesive. (*Id.* at ¶ 31.) Perry alleges that Defendant Atkinson and Pacific Maritime's engineering manager admitted that Pacific Maritime didn't follow these requirements, but still certified that the doors complied with the contractual requirements. (*Id.* at ¶¶ 32–34.) Perry alleges that this was a common practice for the Defendants, and that they used false statements regarding conformance with contractual requirements to obtain payment for hundreds of metal joiner doors that they supplied to the U.S. Navy, U.S. Coast Guard, and Department of Defense contractors. (*Id.* at ¶ 34.) The complaint doesn't identify the required testing or the required adhesive, the adhesive Defendants actually used, the content of the fraudulent certification, or when the alleged misrepresentation was made.

### 4. Austal Locker Contract

In August 2012, Pacific Maritime entered into a contract with Austal to fabricate "shock grade" lockers that would be supplied to the Navy and Coast Guard. (*Id.* at ¶ 35.) Perry alleges that, after all of the lockers had been fabricated, one of the lockers was tested, and failed. (*Id.* at ¶ 36.) Perry alleges that Defendant Atkinson and Pacific Maritime's engineering manager instructed him to prepare a request for a "shock test extension" for the lockers, which Perry contends would only be proper if the locker were equivalent to a product that was already approved by the Navy. (*Id.* at ¶ 37.) Perry alleges that, when he asked for documentation demonstrating that a shock test extension request was proper, Atkinson and the engineering manager refused. (*Id.* at ¶¶ 38–41.) Perry alleges that Defendants fraudulently procured approval of the lockers, and were paid for them. (*Id.* at ¶¶ 41–43.) The complaint doesn't identify the required testing, the content of the misrepresentation, who made the misrepresentation, or when the alleged misrepresentation was made.

### 5. Combination Locks

From January 2011 to November 2012, Perry alleges he observed that Defendants installed hundreds of inferior "Style I" combination locks on secretary lockers fabricated for the use of the U.S. government, and fraudulently represented that they were supplying contractually required "Style II" combination locks. (*Id.* at ¶¶ 44–47.) Perry alleges that Atkinson was involved in the misrepresentation. (*Id.* at ¶ 47.)

### 6. Chairs

In April 2012, Defendants entered into a contract with the Navy to provide chairs. (*Id.* at ¶ 48.) While the contract required Defendants to supply chairs manufactured in the United States, Defendants allegedly supplied chairs manufactured in China, and falsified documents to hide this fact. (*Id.* at ¶¶ 49–51.) The complaint doesn't identify the individuals involved with the misrepresentation, when the alleged misrepresentation was made, or the content of the fraudulent misrepresentation.

## II.  Judicial Notice of Government Contracts

While Perry alleges that Defendants violated provisions in several government contracts, he doesn't attach them to his complaint. Defendants submit what they contend are the relevant government contracts, and seek judicial notice. (Docket no. 10-2.)

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or "that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted). "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Perry's complaint refers to six of the twelve contractual documents that Defendants attach to their motion to dismiss. (Docket no. 1 at ¶ 17 (referring to NAVSHIPS Drawing Nos. 804-4623540 and 805-4629248)); (*id.* at ¶ 20 (referring to NAVSHIPS Drawing No. 804-5959320)); (*id.* at ¶ 43 (referring to section 6.6.6 of MIL-S-901D)); (*id.* at ¶ 44 (referring to NAVSHIPS Drawing Nos. 805-1636410 and 805-1637639)). Perry's allegations revolve around Defendants' alleged failure to adhere to the requirements in these contractual documents, and he doesn't question the authenticity of the contracts attached to Defendants'

motion or even respond to the request for judicial notice. (Docket no. 13.) Thus, for the purpose of resolving Defendants' motion to dismiss, exhibits A-1, A-2, B-2, E-3, F-1, and F-2 to the motion are treated as part of the complaint. But, despite Defendants' claim to the contrary, Perry doesn't refer to the other six contractual documents. And Defendants don't allege facts indicating that the remaining documents are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201; *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1055 (S.D. Cal. 2006) (holding that the party requesting judicial notice bears the burden to persuade the court that judicial notice is proper). Thus, the Court doesn't take judicial notice of exhibits B-1, D-1, D-2, E-1, E-2, and F-3.

Although some of Defendants' evidence can't be considered at this stage of the case, the Court observes that Perry's counsel has both an obligation to investigate his client's allegations and an obligation not to plead a claim that he learns is without factual or legal support. Fed. R. Civ. P. 11(b). If counsel is aware of facts that bar Perry's claims—such as amendments nullifying the contractual provisions he relies on—and pursues the claim without a non-frivolous argument that the claim is nevertheless viable, "counsel treads on perilous ground." *Medrano v. Caliber Homes Loans, Inc.*, 2014 WL 7236925, at *8 (C.D. Cal. Dec.19, 2014); *see also* Fed. R. Civ. P. 11(c).

**III.  Discussion**

While the specific facts surrounding each contract vary, Defendants' arguments in support of their motion to dismiss fall into three general categories. First, Defendants contend that the contract drawings contradict some of Perry's claims. Second, Defendants attack Perry's competence, portraying him as a disgruntled former employee that wasn't in a role that would allow him to observe the fraud he alleges. Third, Defendants argue that Perry's allegations don't contain sufficient factual matter to establish a plausible claim or to meet the heightened pleading standard applicable to fraud claims.

/ / /

### A. Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept all factual allegations as true and construe them in the light most favorable to Perry. *Cedars Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat Defendants' motion to dismiss, Perry's factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While the Court must draw all reasonable inferences in Perry's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the Court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (internal brackets and quotation marks omitted).

Federal Rule of Civil Procedure 9(b) adds an additional pleading requirement: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." On the other hand, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The heightened pleading standard of Rule 9(b) governs [False Claims Act] claims." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.* at 1055 (internal brackets and quotation marks omitted).

### B. Analysis

#### 1. NASSCO Metal Joiner Doors Contracts

With respect to the NASSCO contracts, Defendants contend (1) the contract documents don't require testing of the doors; (2) there's no certificate requirement in the

contract; and (3) Perry doesn't allege sufficient facts to state a claim for use of the wrong adhesive. Perry's opposition to the motion to dismiss doesn't respond to these arguments.

### a. Testing

Defendants argue that, contrary to Perry's allegations, NAVSHIPS Drawing Nos. 804-4623540 and 805-4629248 don't require Defendants to test the metal joiner doors before delivering them. (Docket no. 10 at 4.) Instead, they assert that Drawing No. 804-4623540 applies to "metal joiner bulkhead panels," not metal joiner doors, and Drawing No. 805-4629248 merely sets forth conditions that the doors must be able to withstand. Defendants are correct that Drawing No. 804-4623540 applies to metal joiner bulkheads, and not to doors, and is therefore inapplicable to Perry's allegations.

Drawing No. 805-4629248 requires the metal joiner doors to "meet [specified] elevated temperature requirements" and states that the doors "shall be capable of passing a slamming test . . . ." (Docket no. 10-3.) Thus, the language presented to the Court doesn't specifically require Defendants to test any of the doors, and leaves open the possibility that Defendants could meet their contractual responsibilities by, for example: testing a small representative sample of doors; constructing the doors in accordance with a design that had already been shown to pass the specified tests; or even constructing the doors in accordance with a design that had been analyzed and found to meet the specified testing requirements. Perry's complaint doesn't specifically address any of these possibilities. Instead, Perry alleges that "Defendants did not perform the testing requirement as called for by the contracts," without even explaining what he thinks the contracts required Defendants to do. (Docket no. 1 at ¶ 18.) Thus, Perry's testing allegation boils down to a citation to a drawing number and an unexplained claim that Defendants didn't follow the drawing. This type of "the-defendant-unlawfully-harmed-me accusation" doesn't survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Perry's complaint adds the allegation that "Defendants delivered the honeycomb core metal joiner doors to NASSCO with a certificate of conformance falsely representing that the doors had been fabricated and tested as called for by the contracts knowing that those

1  representations were false and were made for the purpose of inducing payment of the false
2  and fraudulent claims." (Docket no. 1 at ¶ 19.) This allegation gets Perry closer to the mark.
3  The reference to testing in the contract drawings puts *some* onus on Defendants. So an
4  allegation that Defendants affirmatively represented that they had met their duty by
5  performing tests, but knew they hadn't actually performed them, suggests fraud.

But Perry's allegations still fall short of Rule 9(b)'s heightened pleading standard because he doesn't identify the who, what, when, where, and how of the alleged fraud. *See U.S. ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*, 2012 WL 913229, at *3 (D. Or. Mar. 16, 2012) (reversed on other grounds) (directing the relator to amend his complaint to allege "the 'who, what, when, where, and how' to support each element of the alleged False Claims Act violations with regard to each false claim supposedly made by each defendant as well as the conduct alleged to be fraudulent"). For example, nowhere does Perry indicate when the certificate of conformance was delivered or what it said Defendants had done to meet the contractual requirements. Nor does Perry allege the identity of the individuals engaged with falsifying the certificate. *Sultan v. BAC Home Loans Servicing L.P.*, 2011 WL 1557933, at *3 (W.D. Mo. Apr. 25, 2011) (citing *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004), and finding general reference to the defendant as insufficient to meet the "who" of the particularity requirement because "[p]leaders alleging fraud are required to identify individuals involved in the fraud"). The existence of a "false statement or fraudulent course of conduct" is among the elements a relator must prove to establish False Claims Act liability, and the relator must allege it with particularity. *Hooker Creek*, 2012 WL 913229, at *3; *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). Perry's claim that Defendants committed fraud on the NASSCO contract by failing to comply with the testing standard falls short of Rule 9(b)'s mandate.

### b.   Certificate of Conformance

Next Defendants contend there is no certificate requirement, so Perry's allegations regarding a misleading certificate don't establish a false claim. But, Perry doesn't allege that the certificate was required under the NASSCO requirement. Instead he alleges that, to

induce payment, Defendants provided a certificate of conformance, and it contained false representations. The False Claims Act isn't limited to alleged misrepresentations made in a contractually required submission. Thus, Defendants' challenge to the certificate of conformance doesn't warrant dismissal. Instead, as discussed above, the problem with Perry's challenge is that it doesn't identify the who, what, when, where, and how of the alleged misleading certificate.

### c. Adhesive

In his complaint, Perry alleges that "[c]ompliance with the [NASSCO] contracts further required pursuant to Note 3 of the above-mentioned NAVSHIPS Drawing # 804-4623540 Rev. A, that the adhesive to be used in fabrication of the doors be an approved adhesive as called for by QPL-AMS-A-25463-1." (Docket no. 1 at ¶ 17.) As discussed above, Drawing No. 804-4623540 applies to metal joiner bulkheads, and not to doors, and is therefore inapplicable to Perry's allegations. Moreover, like his testing allegation, Perry's adhesive allegation is nothing more than a citation to a drawing number and an unexplained claim that Defendants didn't follow the drawing. Thus, Perry's adhesive claim fails under both Rule 8 and Rule 9(b).

The Court **GRANTS** Defendants' motion to dismiss Perry's allegations regarding the NASSCO contracts.

### 2. DCMA Metal Joiner Doors Contracts

With respect to the DCMA contracts, Defendants contend that (1) Perry wasn't involved with the contract; (2) after Perry left his employment with the Defendants, the government amended the contracts to remove the two-part inspection requirement; (3) the contracts didn't include a weight requirement; and (4) Perry doesn't meet Rule 9(b)'s heightened pleading standard.

### a. Perry's Involvement with the Contract

Defendants argue that the Court should dismiss the complaint because Perry wasn't in a role that would allow him to observe the fraud he alleges. (*See* Docket no. 10 at 5 ("[P]laintiff was generally out of the loop on this contract . . . .")). Defendants repeat this

refrain throughout their motion to dismiss. (*See, e.g.*, *id*. at 1 ("[The Complaint] is brought by a terminated and disgruntled ex-employee against his former employer . . . .")); (*id*. at 1–2 ("Plaintiff was employed by PMI for approximately two years, but in a capacity that did not afford him the responsibility or opportunity to understand the terms or full context of the contract process.")); (*id*. at 2–3 ("Every Claim is to varying degrees undermined by plaintiff's lack of opportunity or duty to be significantly involved with the matters he describes.")); (*id*. at 3 ("He would not be in position to know what adhesive PMI used on the doors. . . .")); (*id*. at 7 ("And how would plaintiff know either the weight of the doors or which contract clause governed the weight, if any?)); (*id*. at 8 ("Neither is plaintiff in a position to know which adhesive was actually being used by PMI and whether it was approved by the government.")). It's possible that Defendants' contention will be vindicated through discovery. But that's not the question at the motion to dismiss stage. Perry alleges Defendants employed him "in the capacities of engineering, CNC programming, planning and quality control," and that he was actively engaged in inspecting Defendants' products. Accepting Perry's factual allegations as true and construing the pleadings in the light most favorable to him, it's plausible that he was in a position to witness the alleged fraud.

### b. Amendment of the Two-Part Inspection Requirement

Defendants admit that there was a two-part inspection requirement, but contend that exhibit B-1 to their motion removes the requirement. (Docket no. 10 at 6.) As discussed above, Defendants haven't met their burden to establish that this amendment is the proper subject of judicial notice. Moreover, because the amendment was issued almost a year after the alleged fraud occurred, it doesn't necessarily rule out Perry's allegations.

### c. Weight Requirement

In response to Perry's weight requirement allegations, Defendants contend that there is no weight limit. They don't, however, provide the relevant contracts to contradict Perry's allegations, and the Court must accept Perry's factual allegations as true.

/ / /

/ / /

### d. Particularity of DCMA Contract Allegations

Unlike his NASSCO allegations, Perry's DCMA allegations include the month in which he observed the alleged fraudulent activities; identify the specific employees engaged in the alleged fraud; explain what the contract required; explain how Defendants failed to meet its contractual obligations; and provide the factual content that Defendants allegedly omitted from their report. Thus, the DCMA allegations are stated with particularity.

The Court **DENIES** Defendants' motion to dismiss Perry's allegations regarding the DCMA contracts.

### 3. Coast Guard Metal Joiner Doors Contract

Defendants contend that exhibits D-1 and D-2 to their motion contradict Perry's allegations. (Docket no. 10 at 8.) But, as discussed above, Defendants haven't met their burden to establish that these exhibits are the proper subject of judicial notice.

Defendants also argue that Perry's Coast Guard contract allegations suffer from the same infirmities as his NASSCO allegations. Defendants are correct. Perry's reliance on Drawing No. 804-4623540 is misplaced. Perry's testing and adhesive allegations are nothing more than a citation to a drawing number and an unexplained claim that Defendants didn't follow the drawing. And while Perry includes more information regarding who was involved with the alleged fraud on the Coast Guard contract, he doesn't allege the content of the allegedly misleading certificate of conformance or the timing of its submission (as opposed to the date Defendants entered into the contract).

The Court **GRANTS** Defendants' motion to dismiss Perry's allegations regarding the Coast Guard contracts.

### 4. Austal Locker Contract

Defendants contend that exhibits E-1, E-2, and E-3 to their motion contradict Perry's allegations. (Docket no. 10 at 9.) As discussed above, Defendants haven't met their burden to establish that exhibits E-1 and E-2 are the proper subject of judicial notice, and exhibit E-3 doesn't refute Perry's allegation that Defendants were required to test the lockers.

///

However, Perry fails to allege his Austal locker claim with particularity. While he implies that certain contract drawings required some type of testing, and that one of the lockers failed a test, he doesn't explain what testing was required. All he alleges is that "Defendants falsely and fraudulently secured approval for the subject lockers . . . ," without alleging when the alleged fraudulent misrepresentation was made, who made the misrepresentation, how approval was secured, or even the content of the alleged misrepresentation. Thus, Perry fails to identify the who, what, when, where, and how of the alleged Austal locker fraud. The Court **GRANTS** Defendants' motion to dismiss Perry's allegations regarding that contract.

### 5. Combination Locks

Defendants contend that exhibits F-1, F-2, and F-3 to their motion contradict Perry's allegations. (Docket no. 10 at 9.) As discussed above, Defendants haven't met their burden to establish that exhibit F-3 is the proper subject of judicial notice, and exhibits F-1 and F-2 don't refute Perry's allegation that Defendants were required to install "Style II combination locks." Additionally, Perry identifies when the fraud occurred; what Defendants were required to do under the contract, and what they did instead; Atkinson as an individual personally involved in the fraud; and the content of the alleged misrepresentation. Thus, Perry's combination locks claim is stated with particularity and Defendants' motion to dismiss it is **DENIED**.

### 6. Chairs

Perry's chair contract claim doesn't allege the individuals involved with the fraud, how the fraudulent misrepresentation was made, or when the fraudulent misrepresentation occurred. Thus, that claim isn't pleaded with particularity and the Court **GRANTS** Defendants' motion to dismiss it.

## IV. Conclusion

Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Counts I (NASSCO contract), IV (Coast Guard metal joiner door contract), V (Austal locker contract), and VII (chair contract) are **DISMISSED WITH LEAVE TO AMEND**. Counts II and

III (DCMA contracts), and Count VI (combination lock contract) sufficiently state a claim. If Perry thinks he can successfully amend his complaint, he must seek leave by *ex parte* motion no later than July 27, 2015. His proposed amended complaint must be attached as an exhibit to the motion. If he files such a motion, Defendants shall have until August 10, 2015 to oppose it. No reply should be filed unless leave is obtained in advance.

**IT IS SO ORDERED**.

DATED: July 16, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge