# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH EARL PERRY, <br><br> Plaintiff, <br> vs. <br> PACIFIC MARITIME INDUSTRIES CORP., et al., <br><br> Defendants. | CASE NO. 13cv2599-LAB (JMA) <br><br> **ORDER GRANTING SUMMARY JUDGMENT** |

When evaluating a False Claims Act case, courts must "ensure that government contractors will not face onerous and unforeseen FCA liability as the result of noncompliance with any of potentially hundreds of legal requirements established by contract. Payment requests by a contractor who has violated minor contractual provisions that are merely ancillary to the parties' bargain are neither false nor fraudulent." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) (quotations and citation omitted). That's the case here.

Joseph Perry filed a *qui tam* action on behalf of the United States against his former employer—Pacific Maritime Industries, Harcon Precision Metals, and owner John Atkinson ("Pacific")—for knowingly submitting false claims for payment to the United States in violation of the False Claims Act. 31 U.S.C. § 3729. Perry says Pacific tried to cheat the Navy on three contracts by supplying (1) overweight doors, (2) cheap locks, and (3) defective lockers. The Court disagrees. Pacific's motion for summary judgment is granted.

## Legal Standard

Summary judgment is appropriate when there's no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). "To survive summary judgment, the relator must establish evidence on which a reasonable jury could find for the plaintiff." *Serco, Inc.*, 846 F.3d at 330 (9th Cir. 2017) (affirming summary judgment for defense contractor accused of submitting fraudulent claims to Navy) (quotations and emphasis omitted).

## Analysis

Under the False Claims Act, Perry must prove that Pacific knowingly presented a false claim for payment or approval. 31 U.S.C. § 3729 (a)(1)(A).[1] "A misrepresentation about compliance with a . . . contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016). Perry hasn't offered material evidence that Pacific was trying to cheat the government. In fact, Perry didn't mention a single case or offer any argument on how the specific aspects of the law apply to his claims.

### I.  Doors

#### A.  Background

Pacific agreed to build 50 doors for Defense Logistics Agency for use on Navy ships. The contract specified payment of some $86,000—roughly $82,500 for the doors and $3,500 for a First Article Test. The Test required Pacific to inspect one of the doors to ensure the door complied with the contract specifications. The contract also required Defense Contract Management Agency to approve the Test.[2]

Perry says the Test had two parts. Juvenal Torres performed the first part; Perry performed the second part. The doors complied with all of the contract specifications, except, on Perry's reading of the relevant military provision, the doors were too heavy. Perry told CEO John Atkinson and Engineering Manager Phu Vu. They disagreed. Atkinson said there was no weight requirement for the doors. Perry alleges Atkinson instructed him to write down

---

[1] Perry brings claims for the same violations under the false record and conspiracy provisions of the Act as well. 31 U.S.C. § 3729(a)(1)(B) and (C).

[2] Dkt. 50 and Dkt. 44-5, Ex. L.

"that all items tested" "were in conformance with the requirements." Perry prepared the Test, but refused to sign it. Instead, Juvenal Torres, Phu Vu, and Roger Kemp (Quality Department) signed the Test.[3]

Pacific shipped the doors to Defense Logistics before Defense Contract Management Agency approved the Test as the contract required. As a result, Defense Logistics paid Pacific for the doors, but it never paid for the Test. About nine months after Pacific shipped the doors, Defense Logistics modified the contract and deleted the provision requiring the Test. Atkinson says the problem was that Pacific hadn't performed a First Article Test in a while, there was some confusion over what needed to be done, and ultimately, Pacific performed a standard inspection of the 50 doors instead of a true First Article Test.[4]

**B.    Analysis**

Perry alleges two false statements: (1) Perry's statements on the First Article Test that the doors conformed with weight requirements even though they didn't; and (2) Torres, Vu, and Kemp's signatures approving the portion of the Test that Perry performed.

### 1.    Weight

"Knowing submission of claims that, as here, are not false or fraudulent, obviously does not give rise to liability." *U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir. 1995). Perry says that he falsified the First Article Test on Atkinson's orders by writing down that the doors "were in conformance with the requirements." But that's not what the Test says. Item 78, "Weight of Furnishing," states that "the weight of the furnishing shall not be greater than 105 percent of the weight shown." Pacific's comments for Item 78, however, say "N/A" and "Not Required." Perry doesn't explain this contradiction.[5]

/ / /

---

[3] Dkt. 45-1.

[4] Dkt. 47-1 and Dkt. 45-1. *Compare* the "PMI Inspection Report" that Perry calls the First Article Test (Dkt.45-4, Ex. A, B) *with* the "First Article Test" Pacific submitted with its Reply. (Dkt. 47-1, Ex. JA-2.)

[5] Dkt. 45-1 and 45-4, Ex. A, B. Items 76 and 79 also mention weight, but Item 78 is the controlling provision since Perry says he relied on the rule from Item 78 that the doors couldn't exceed 105% of the maximum weight.

- 3 -

Pacific does. Atkinson explained that the form was pre-populated with "Not Required" for Item 78 because the doors didn't need to be a certain weight. Atkinson says his company's been selling these doors to the Navy for 15 years. The Navy has never raised the issue of a weight requirement. Pacific also provided a recent order for the same doors, for the same customer, with an official First Article Test that doesn't list any weight requirement. Pacific says it "has no control over the final weight" because the contract requires Pacific to use specific material to fabricate the doors in a specific way. In sum, Perry hasn't raised a genuine issue of material dispute that Pacific made *false* statements about the doors' weight. *See Universal Health*, 136 S. Ct. at 2003–04.[6]

Even if there was a genuine dispute whether the notations on the First Article Test were false, Perry still loses. Because courts grant summary judgment to government contractors when the relator fails to produce "sufficient evidence to support an inference that the defendants understood that they were interpreting the [contract] incorrectly." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998). Perry argues that his interpretation of an old and ambiguous military provision requires a certain weight for the doors. But even if Perry has the better reading, he hasn't offered sufficient evidence that Pacific *knowingly* interpreted the antiquated provision to pawn-off overweight doors on the Navy. *See Hochman*, 145 F.3d 1076 (affirming summary judgment because good faith contract interpretation didn't give rise to requisite knowledge); *see also Lindenthal*, 61 F.3d at 1412 (9th Cir. 1995).

### 2. First Article Test

The False Claims Act defines *material* to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Perry says Pacific also falsified the First Article Test by having Torres, Vu, and Kemp sign-off on the portion of the Test that Perry completed so that Defense Logistics would pay for the doors.

/ / /

---

[6] Dkt. 44-10 and Dkt. 47-1.

Perry's right. A "claim may be false even if the services billed were actually provided, if the purported provider did not actually render or supervise the service." *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001). Perry's claim, however, doesn't make it to a jury because, unlike *Mackby*, the signatures weren't material.

First, Perry hasn't offered evidence, argument, or authority that suggests these signatures meet the "demanding" "materiality standard" under the False Claims Act. *Universal Health*, 136 S. Ct. at 2003. The Supreme Court explained that courts must strictly enforce the materiality standard:

> The False Claims Act is not an all-purpose antifraud statute . . . or a vehicle for punishing garden-variety breaches of contract . . . . A misrepresentation cannot be deemed material merely because the Government designates compliance with a . . . contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* (quotations omitted). Perry told Vu and Atkinson that the doors complied in all ways, except, weight. But since there was no weight requirement (or Pacific made a good faith call that there was no weight requirement), having other members of the quality assurance team sign this report wasn't material. At best, the signatures are the type of "minor or insubstantial" compliance the Supreme Court said doesn't pass muster under the Act's "rigorous materiality requirement." *Id.* at 1996; *see U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999) ("Even if this was an outright lie, the lie was immaterial.").

Second, the Supreme Court explained that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Universal*, 136 S. Ct. at 2003–04. Here, Defense Logistics agreed to pay the full contract price for the 50 doors even though it knew Defense Contract Management Agency didn't review the First Article Test.

/ / /

/ / /

/ / /

\* \* \*

In sum, Perry hasn't offered evidence that Pacific knowingly attempted to defraud the government by selling them overweight doors or submitting a First Article Test. Pacific's motion for summary judgment on Perry's claims related to the doors is granted.

## II.     Locks

### A.     Background

Perry says that Pacific contracted to make combination locks for the Navy. Similar to the contract provision for the doors, the locks contract references an outdated military provision that redirects manufacturers to an updated, but ambiguous provision—UL 768. Perry reads UL 768 to require that Pacific produce a more expensive, higher-grade lock. Pacific reads UL 768 as an ambiguous provision that offers contracting parties discretion to select the appropriate lock for the intended use.[7]

### B.     Analysis

Where the "evidence shows only a disputed legal issue[,] that is not enough to support a reasonable inference that the [representation] was false within the meaning of the False Claims Act." *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996). Perry testified that he wasn't sure "if the customer knows that they're getting the . . . inferior lock." His declaration filed in support of his motion didn't even address this claim. The complaint alleges that Pacific "fraudulently represent[ed] that" the more expensive "combination locks had been installed" when in fact, Pacific was using less expensive locks. Perry's offered no evidence that Pacific made false representations to the Navy that it had installed the more expensive lock.[8]

Even if Perry could point to evidence and he was right about his interpretation of UL 768, he didn't offer "sufficient evidence to support an inference that the defendants understood that they were interpreting the [contract] incorrectly." *Hochman*, 145 F.3d at 1076. Atkinson submitted evidence, and Perry's testimony confirmed, that no one in the

---

[7] Dkt. 50.

[8] Dkt. 45-4, Ex. L, Dkt. 44-9 at 158; and Dkt. 1.

1 industry uses the locks that Perry says UL 768 requires. Perry's alternative take on UL 768
2 doesn't create a material, triable issue of fact that Pacific *knew* more expensive locks were
3 required, but decided to use cheaper locks anyway. Perry's "argument raises questions of
4 contract interpretation rather than false claims." *U.S. ex rel. Butler v. Hughes Helicopters,
5 Inc.*, 71 F.3d 321, 326 (9th Cir. 1995). Pacific's motion for summary judgment on Perry's
6 claims related to the combination locks is granted.[9]

**III.    Lockers**

    **A.    Background**

Perry says Pacific contracted with Austal to make three different types of lockers for the Navy. The contract required the lockers to pass shock-testing, but Perry says they didn't. Perry alleges that Pacific asked him to sign-off on some paperwork concerning the lockers that Perry thought would amount to a false representation so he refused. Pacific, however, says it didn't have any contracts with Austal while Perry was employed.[10]

    **B.    Analysis**

"To survive summary judgment, the relator must establish evidence on which a reasonable jury could find for the plaintiff." *Serco*, 846 F.3d at 330 (9th Cir. 2017). Perry's only evidence supporting this claim was his own testimony that he was "pretty sure" he was asked to approve a document involving a contract with Austal. But Pacific produced evidence that it only sold lockers to Austal two years after Perry was terminated and it performed the requisite shock tests when required. Perry hasn't rebutted this evidence. He's failed to offer evidence that a jury could rely on to find for him. Pacific's motion for summary judgment on Perry's claims related to the lockers is granted.[11]

/ / /

/ / /

/ / /

---

[9] Dkt. 44-10.

[10] Dkt. 44-10; 44-7, Ex. U; and Dkt.44-11.

[11] Dkt. 44-9, Ex. CC at 142, 146-47; Dkt. 44-7, Ex. U; and Dkt. 45-1.

## Conclusion

Pacific's motion for summary judgment is granted. The Clerk shall close the case.

**IT IS SO ORDERED**.

DATED: May 30, 2017

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge